# United States Court of Appeals

*for the*

# Federal Circuit

———————————————

APPLE INC., a California corporation,

*Plaintiff-Appellant,*

— v. —

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
a Delaware limited liability company,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA IN NO. 5:12-CV-00630-LHK,
JUDGE LUCY H. KOH

## BRIEF OF *AMICI CURIAE* GOOGLE INC.,
## HTC CORPORATION, HTC AMERICA, INC.,
## LG ELECTRONICS, INC., RACKSPACE HOSTING, INC.,
## RED HAT, INC. AND SAP AMERICA, INC.
## IN SUPPORT OF DEFENDANTS-APPELLEES

KEVIN X. MCGANN
CHRISTOPHER J. GLANCY
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Amici Curiae
Google, Inc., HTC Corporation,
HTC America, Inc., LG
Electronics, Inc., Rackspace
Hosting, Inc., Red Hat, Inc.
and SAP America, Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for *amici curiae* and non-parties Google Inc., HTC Corporation, HTC America, Inc., LG Electronics, Inc., Rackspace Hosting, Inc., Red Hat, Inc., and SAP America, Inc. certifies the following:

1.      The full name of every party or amicus represented by the undersigned counsel in the above-captioned appeal is Google Inc., HTC Corporation, HTC America, Inc., LG Electronics, Inc., Rackspace Hosting, Inc., Red Hat, Inc., and SAP America, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

- HTC America, Inc. is a wholly owned subsidiary of HTC Corporation.

- LG Electronics, Inc. has no parent corporation, and the only publicly held company that owns 10% or more of the stock of LG Electronics, Inc. is LG Corporation.

- Red Hat, Inc. has no parent corporation, and the only publicly held company that own 10% or more of its stock is T. Rowe Price Associates, Inc.  In addition, Jennison Associates LLC, a wholly-

owned subsidiary of publicly-held Prudential Financial, Inc., owns 10% or more of the stock of Red Hat, Inc.

- SAP America, Inc. is a privately held corporation and is a wholly owned subsidiary of SAP AG.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:

Kevin X. McGann
Christopher J. Glancy
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

Warren S. Heit
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California  94306
Telephone:  (650) 213-0300
Facsimile:  (650) 213-8158

Dated:  December 24, 2014

   /s/ Christopher J. Glancy
Christopher J. Glancy

# <u>TABLE OF CONTENTS</u>

INTEREST OF *AMICI CURIAE* .............................................................................1

ARGUMENT .......................................................................................................3

I.    THE DISTRICT COURT CORRECTLY APPLIED
      THE CAUSAL NEXUS REQUIREMENT ....................................................3

    A.    The Scope of a Proposed Injunction is
      Irrelevant to the Irreparable Harm Inquiry............................................6

    B.    There Is No *Douglas Dynamics* Test For
      Proving Irreparable Harm To Reputation ............................................10

        1.    *Douglas Dynamics* is Inapposite...............................................10

        2.    The Proposed *Douglas Dynamics* Test Would Unfairly
      Create a Lower Standard for Proving Causal Nexus for
      Companies With a Reputation for Innovation .........................12

CONCLUSION ..................................................................................................14

Americas 90348498

# TABLE OF AUTHORITIES

## CASES

*Apple Inc.* v. *Samsung Electronics, Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) .............................................................. 7

*Apple Inc. v. Samsung Electronics Co., Ltd.,*
    695 F.3d 1370 (Fed. Cir. 2012) ........................................................ 4, 5

*Apple Inc. v. Samsung Electronics Co., Ltd.,*
    735 F.3d 1352 (Fed. Cir. 2013) ................................................... passim

*Douglas Dynamics, LLC v. Buyers Products Co.*
    717 F.3d 1336 (Fed. Cir. 2013) ................................................... 10, 11

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................. 4, 6, 7, 9

ii

*Amici curiae* and non-parties Google Inc. ("Google"), HTC Corporation and HTC America, Inc. (collectively "HTC"), LG Electronics, Inc. ("LG"), Rackspace Hosting, Inc. ("Rackspace"), Red Hat, Inc. ("Red Hat"), and SAP America, Inc. ("SAP") (collectively "*Amici*") respectfully submit this brief in support of Defendants-Appellants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") and in support of affirmance of the District Court's August 27, 2014 order denying Plaintiff-Appellee Apple Inc.'s ("Apple") motion for a permanent injunction (the "Order").

## INTEREST OF *AMICI CURIAE*[1]

*Amicus* Google is the developer of Android, a mobile platform for devices such as smartphones and tablet computers, and the particular versions of Android known as "Gingerbread," "Ice Cream Sandwich" and "Jelly Bean" running on the Samsung products that the jury found to have infringed.  Google also develops and provides Internet-related services and products, including search, cloud computing, software and online advertising technologies.

---

[1] Pursuant to Fed. R. App. P. 29(c), Google, HTC, LG, Rackspace, Red Hat, and SAP state that no counsel for a party authored this brief, in whole or in part, and that no person or entity, other than *Amici* or counsel for *Amici*, made any monetary contribution to the preparation or submission of the brief.

*Amicus* HTC is a leading developer and manufacturer of smartphones and tablets based on the Android and Windows Phone platforms. With Google, HTC developed the world's first Android smartphone. HTC was also the first company to launch 3G, 4G WiMAX, 4G HSPA+ and 4G LTE smartphones in the world.

*Amicus* LG is a global leader and technology innovator in consumer electronics, mobile communications and home appliances and is one of the world's leading producers of flat panel TVs, mobile devices, air conditioners, washing machines and refrigerators. Among its many achievements, LG was recognized for developing the world's first LTE mobile modem chip and continues to be the world leader in LTE technology.

*Amicus* Rackspace is a service leader in cloud computing, delivering enterprise-level hosting services to businesses of all sizes and kinds around the world. Rackspace provides server space and internet connectivity that allows businesses to store and retrieve data and to implement their applications and operating systems in a stable, secure environment.

*Amicus* Red Hat is the world's leading provider of open-source software and related services to enterprise customers. Its supply chain involves hundreds of open source projects, which work independently of each other and collaborate over the internet. Its software products are used by Wall Street investment firms, hundreds of Fortune 500 companies, and the United States government.

2

*Amicus* SAP is a leading technology company focused on developing innovative software and computer-based business solutions.  It conducts significant research and development and invests heavily in commercializing innovative technologies.

*Amici* are all innovative technology companies that develop and provide a variety of products and services that, like the smartphones and tablets at issue in this appeal, incorporate a wide array of features.  As such, an issue presented in this appeal – the standards for proving irreparable harm in the permanent injunction analysis under *eBay* where the patents-in-suit cover minor features of an innovative and technologically complex product – is a matter of great concern to *Amici*.

## ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY APPLIED THE CAUSAL NEXUS REQUIREMENT

It is settled law that to merit a permanent injunction, a plaintiff in a patent infringement case, as in any other case, must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

3

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "[B]road classifications" and "categorical rule[s]" are inappropriate in determining whether an injunction should issue.  *Id.* at 393.  It is equally settled that "[t]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Apple Inc. v. Samsung Electronics Co., Ltd.,* 735 F.3d 1352, 1359-60 (Fed. Cir. 2013) ("*Apple III*") (quoting *Apple Inc. v. Samsung Electronics Co., Ltd.,* 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*")).

This Court has provided guidance on meeting the causal nexus requirement. To prove a causal nexus between the alleged harm and the infringement, the plaintiff must show "some connection between the patented feature and demand for [the accused] product."  *Apple III*, 735 F.3d at 1364.  An "insubstantial connection" is not enough.  *Apple II*, 695 F.3d at 1375.  Rather, "the patentee must … show that the infringing feature drives consumer demand for the accused product."  *Id.* at 1375.  The patented feature, however, need not be the sole driver of consumer demand.  *Apple III*, 735 F.3d at 1364.

A patentee may show a causal nexus with evidence that the patented feature is one of several reasons consumers buy the product, or that it makes the product "significantly more desirable" to consumers.  *Id.*  A patentee may also show that

4

the absence of a patented feature makes the product "significantly less desirable," but in this analysis, a court must consider the availability of non-infringing alternatives. *Apple III,* 735 F.3d at 1364-65; *Apple II*, 695 F.3d at 1376 (noting that a laptop computer "will not work (or work long enough) without a battery, cooling fan or even the screws that may hold the frame together, and its value would be accordingly depreciated should those components be removed"). Patents covering multiple features may be considered in the aggregate in some circumstances, such as where "they all relate to the same technology or where they combine to make a product significantly more valuable." *Apple III*, 735 F.3d at 1365.

Apparently recognizing that it cannot prove causal nexus through any of these means, Apple advances two new rules in an effort to make an end-run around the causal nexus requirement: (1) a causal nexus analysis must take into account the scope of the proposed injunction; and (2) irreparable harm to reputation may be shown by proving the so-called *Douglas Dynamics* factors. Neither rule finds support in the law. Moreover, if adopted by this Court, either rule would effectively gut the causal nexus requirement.

Americas 90348498

### A.    The Scope of a Proposed Injunction is
### Irrelevant to the Irreparable Harm Inquiry

Apple asserts that "[a] causal nexus analysis must take into account the

scope of the requested injunction" against the defendant's products, and that the

district court erred by not considering Apple's evidence of irreparable harm "in the

context of Apple's narrowly-tailored request for injunctive relief."  (Apple Br. 34-

35.)  Irreparable harm, however, is harm to the *plaintiff*, not burden on the

defendant.  There is simply no authority (and Apple cites none) for the novel

proposition that the scope of a proposed injunction has any bearing whatsoever on

the connection between the infringement and any alleged irreparable harm.[2]

The logic of this proposed "scope of the injunction" rule is hard to fathom.

A patentee either has been irreparably harmed or it has not; an injunction is merely

a remedy for that harm, if proven.  Moreover, it makes no sense that a patentee

*would not* be irreparably harmed absent a broad product-based injunction, but

*would* be so harmed absent a narrow feature-based injunction.  Apple does not

attempt to explain the difference.  Indeed, Apple makes no effort to explain the

---

[2] The scope of the injunction may be relevant to the balance-of-harms factor, which considers the harm to the defendant if the requested relief is granted and whether "a remedy in equity is warranted."  *See eBay*, 547 U.S. at 391.  It may also be relevant to the public interest factor.  *See Apple III*, 735 F.3d at 1372-73; *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring) ("When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, ... an injunction may not serve the public interest.").

6

relationship between a feature-based injunction and *any* harm, irreparable or not, in the absence of such an injunction.  A conclusory assertion that a causal nexus "necessarily" exists when a proposed injunction is narrowly tailored (Apple Br. 34) is the kind of categorical rule rejected by the United States Supreme Court in *eBay*. *See eBay,* 547 U.S. at 393.

Moreover, any contention that the causal nexus requirement applies "only where the patentee sought to parlay a ***feature-based*** infringement verdict into a ***product-based*** injunction" is incorrect.  (Apple Br. 32 (emphasis in original).) This Court has not so held.  Rather, a showing of causal nexus is required in *all* patent cases, albeit "[i]t just may be more easily satisfied (indeed, perhaps even conceded) for relatively 'simple' products."[3] *Apple III*, 735 F.3d at 1362.

Furthermore, the purpose of the causal nexus requirement is not to prevent a patentee from seeking to unfairly leverage its patent for competitive gain, and the requirement is not limited to that circumstance.  (Apple Br. 31-32.)  Rather, as this Court has clearly stated:

---

[3] Apple suggests that the scope of the injunction in *Apple I* was somehow relevant to the Court's causal nexus analysis.  (Apple Br. 33.)  Apple misconstrues *Apple I*. In *Apple I*, the Court did not discuss the scope of the injunction in the context of irreparable harm.  Rather, the Court found that the district court, in performing its causal nexus analysis, properly considered that Apple's design patent claimed all views of the tablet device (i.e., the "patented feature") in conjunction with evidence that design "mattered more to customers in making tablet purchases." *Apple Inc.* v. *Samsung Electronics, Co., Ltd.*, 678 F.3d 1314, 1328 (Fed. Cir. 2012) ("*Apple I*").

7

> the purpose of the causal nexus requirement is to show that the patentee is irreparably harmed *by the infringement.* Without such a showing, it is reasonable to conclude that a patentee will suffer the same harm with or without an injunction, thus undermining the need for injunctive relief in the first place.

*Apple III*, 735 F.3d at 1363 (emphasis in original). The "scope of the injunction" rule advanced by Apple does nothing to address the true purpose of the causal nexus requirement – tying the infringement to the alleged harm.

The proposed rule would also undermine one of the safeguards of the causal nexus requirement, preventing holdup litigations. Smartphones and tablets, such as the devices at issue here, contain hundreds of features that consumers find appealing to one degree or another. According to patent aggregator RPX, there are over 250,000 patents involved in a typical smartphone.[4] Thus, manufacturers of technologically complex devices face the prospect of thousands of patent litigations, each one with the potential to result in either a product-based injunction or a feature-based injunction. A multitude of even feature-based injunctions would require manufacturers to expend an inordinate amount of time and effort to design around trivial patented features. This burden far outweighs the monetary compensation available to the patentee by means of a ongoing reasonable royalty.

---

[4] *See Tech patent arms war reaches new level of intensity*, March 30, 2011, http://www.ft.com/intl/cms/s/0/b0da8540-5aea-11e0-a290-00144feab49a.html (last visited December 18, 2014).

8

And these resources can be better invested in developing new products and improving existing ones, thus fostering innovation.

Moreover, a feature-based injunction – especially one that seeks to enjoin features "not colorably different" from the patented features, as proposed here – would invite further litigation over whether any non-infringing design-around alternative complies with the injunction.  As Justice Kennedy observed in *eBay*, "an injunction, *and the potentially serious sanctions arising from its violation*, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent."  *eBay*, 547 U.S. at 396 (emphasis added). To borrow from this Court's previous analogy, if a laptop computer maker was required to change the design of its battery, cooling fan or screws (and the list goes on and on) every time it was found to infringe one of the thousands of patents covering minor features of its product, and was then forced to litigate whether its design-around complies with the injunction, the laptop maker would face the same threat of coercive patent litigation that results from product-based injunctions.

Where, as here, a patentee fails to establish that the infringement has a causal nexus to the alleged harm, the scope of a proposed injunction simply cannot fill that evidentiary hole.  The "scope of the injunction" rule has no bearing on this Court's irreparable harm analysis.

Americas 90348498

### B.     There Is No *Douglas Dynamics* Test For Proving Irreparable Harm To Reputation

*Douglas Dynamics* did not establish a new, alternative way to prove a causal nexus between infringement and irreparable harm to reputation, and there is no five-factor *Douglas Dynamics* test for proving irreparable harm to reputation. (Apple Br. 34-35.)  Indeed, as this Court has specifically noted, causal nexus was not even challenged in *Douglas Dynamics*.  *Apple III*, 735 F.3d at 1362. Moreover, such a test would allow companies with a "reputation for innovation" to skirt the causal nexus requirement, while imposing a higher burden on companies without such a reputation.

### 1.     *Douglas Dynamics* is Inapposite

*Douglas Dynamics* is easily distinguished on its facts and represents precisely the kind of case where the causal nexus requirement is "easily satisfied (indeed, perhaps even conceded)."  *See id.* at 1362.  First, *Douglas Dynamics* did not involve a patented component of a multi-feature product.  Douglas's patents were directed to an entire snowplow blade assembly, not a specific feature of that assembly, and both parties manufactured and sold commercial embodiments of the entire patented assembly.  *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1339 (Fed. Cir. 2013).  The patents here are directed to three trivial features of a tablet or smartphone device – "quick links," "slide to unlock" and "auto correct" – out of literally hundreds of features found on such a device.

10

Second, the core innovation of Douglas's patented snowplow design allows a user to easily remove the assembly, reducing stress on the vehicle's suspension. *Id.* Douglas promoted this "easy on, easy off" feature in advertising for its own snowplow assemblies by incorporating the concept into its trademark – Minute Mount – to ensure that snowplow customers associate the patented feature with Douglas. *Id.* at 1345. Here, there is no evidence that the patented features are core innovations of Apple's products or that Apple has advertised them as such. Apple certainly has not incorporated those features into its product brand names.

Third, Douglas never licensed the patents-in-suit and intentionally chose not to, thus insuring that the innovative design would (absent infringement) be exclusively associated with Douglas in the minds of its customers. *Douglas Dynamics*, 717 F.3d at 1345. Here, Apple has licensed the patents-in-suit to several competitors, including IBM, Nokia, HTC and Microsoft, and there is simply no evidence that anyone exclusively associates the patented features with Apple.

Even if a patentee has suffered, or is likely to suffer, harm to its reputation as an innovator, that patentee must still prove that its reputational harm is causally connected to the infringement, and not to competition generally. *Douglas Dynamics* does not excuse a patentee from that burden.

11

## 2.  The Proposed *Douglas Dynamics* Test Would Unfairly Create a Lower Standard for Proving Causal Nexus for Companies With a Reputation for Innovation

The "five factors" Apple gleans from *Douglas Dynamics* are:  (1) the existence of direct competition between the patentee and infringer; (2) the patentee's reputation as an innovator; (3) the infringer's less prestigious reputation; (4) the patentee's effort to maintain exclusive control over its patented features; and (5) that absent an injunction, consumers might believe the patentee did not enforce its intellectual property rights.  (Apple Br. 34-35.)  Arguably, Apple has shown the first two factors, but the evidence for the remaining three is scant, at best.  As the district court correctly found, Samsung itself has a demonstrable reputation for innovation, and Apple failed to establish that the infringing Samsung products are perceived by consumers as any less prestigious than Apple's.  Order at 16.  Apple has licensed the patents-in-suit, so, unlike in *Douglas Dynamics*, Apple does not have exclusivity as to those features.  Finally, anyone who has read a newspaper knows that Apple enforces its intellectual property rights, and there is no evidence that consumers "might" think otherwise.  (Apple Br. 35.)  The issue here is not enforcement, but the proper remedy.

So the proposed "*Douglas Dynamics* test," as Apple has framed it, is this:  if a patentee has a reputation for innovation and its patent is infringed by a competitor, then the patentee's reputation will *necessarily* be harmed by that

12

infringement – no matter how trivial the patented feature – because consumers *might* believe the patentee did not enforce its intellectual property rights. No further proof of causal nexus is needed. The logical leap is astounding.

Without a showing of causal nexus between the alleged reputational harm and the infringement, this proposed *Douglas Dynamics* test would create a presumption in favor of "innovative" companies, the type of categorical rule rejected by *eBay*. Moreover, such a rule would unfairly create a two-tiered system for proving causal nexus. Companies without a reputation for innovation would have to prove causal nexus through the means articulated by this Court, while companies with such a reputation could rely on a newly-created presumption that irreparable harm will naturally flow from a competitor's infringement.

Returning again to this Court's laptop computer analogy, it would make no sense to presume that an innovative laptop maker would suffer reputational injury from a competitor's use of its patented cooling fan or screws. Regardless, there is no proof here that consumers think any less of Apple because the patented features – "quick links," "slide to unlock" and "auto correct" – appear in other phones, and any contention to the contrary is pure speculation.

13

## CONCLUSION

For the foregoing reasons, the Court should affirm the Order.


Dated:  December 24, 2014    WHITE & CASE LLP


                /s/ Christopher J. Glancy
            Kevin X. McGann
            Christopher J. Glancy
            1155 Avenue of the Americas
            New York, New York  10036
            Telephone:  (212) 819-8200
            Facsimile:  (212) 354-8113

            Warren S. Heit
            WHITE & CASE LLP
            3000 El Camino Real
            5 Palo Alto Square, 9th Floor
            Palo Alto, California 94306

            Attorneys for *amici curiae* Google Inc.,
            HTC Corporation, HTC America, Inc.,
            LG Electronics, Inc., Rackspace
            Hosting, Inc., Red Hat, Inc., and SAP
            America, Inc.

Americas 90348498

# United States Court of Appeals
# for the Federal Circuit

*Apple Inc. v Samsung Electronics Co., Ltd.,* 2014-1802

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by WHITE & CASE LLP, Attorneys for *Amici Curiae* to print this document.  I am an employee of Counsel Press.

On **December 24, 2014** counsel has authorized me to electronically file the foregoing **Brief for *Amici Curiae*** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

## Counsel for Plaintiff-Appellant Apple Inc.:

William F. Lee
(Principal Counsel)
Richard W. O'Neill
Mark C. Fleming
Lauren B. Fletcher
Andrew J. Danford
Sarah R. Frazier
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
richard.o'neill@wilmerhale.com
mark.fleming@wilmerhale.com
lauren.fletcher@wilmerhale.com
andrew.danford@wilmerhale.com
sarah.frazier@wilmerhale.com

Thomas G. Sprankling
Wilmer Cutler Pickering
    Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000
thomas.sprankling@wilmerhale.com

Mark D. Selwyn
Wilmer Cutler Pickering
    Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000
mark.selwyn@wilmerhale.com

Rachel Krevans
Erik J. Olson
Nathan B. Sabri
Christopher L. Robinson
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
rkrevans@mofo.com
ejolson@mofo.com
nsabri@mofo.com
christopherrobinson@mofo.com


**Counsel for Defendant-Appellee Samsung Electronics America, Inc., et al.:**

| | |
|---|---|
| Kathleen M. Sullivan | Brian C. Cannon |
| (Principal Counsel) | Kevin P.B. Johnson |
| William Adams | Victoria F. Maroulis |
| Quinn Emanuel Urquhart | Quinn Emanuel Urquhart |
| & Sullivan, LLP | & Sullivan, LLP |
| 22nd Floor | 555 Twin Dolphin Drive |
| 51 Madison Avenue | 5th Floor |
| 22nd Floor | Redwood Shores, CA 94065 |
| New York, NY 10010 | 650-801-5000 |
| 212-849-7000 | briancannon@quinnemanuel.com |
| kathleensullivan@quinnemanuel.com | kevinjohnson@quinnemanuel.com |
| williamadams@quinnemanuel.com | victoriamaroulis@quinnemanuel.com |
| | |
| Kevin A. Smith | John B. Quinn |
| Quinn Emanuel Urquhart | Michael T. Zeller |
| & Sullivan, LLP | Scott L. Watson |
| 50 California Street | Quinn Emanuel Urquhart |
| San Francisco, CA 94111 | & Sullivan, LLP |
| 415-875-6600 | Firm: 213-443-3000 |
| kevinsmith@quinnemanuel.com | 865 South Figueroa Street |
| | 10th Floor |
| | Los Angeles, CA 90017 |
| | 213-443-3000 |
| | michaelzeller@quinnemanuel.com |
| | scottwatson@quinnemanuel.com |

**Counsel for Amici Nokia Corporation and Nokia USA Inc.:**

Patrick J. Flinn                            Ryan W. Koppelman
John D. Haynes                           ALSTON & BIRD LLP
ALSTON & BIRD LLP                 1950 University Circle, Fifth Fl.
1201 West Peachtree Street        East Palo Alto, CA 94303-2282
Atlanta, Georgia 30309               (650) 838-2000
(404) 881-7000


**Counsel for Amicus Ericsson Inc.:**

Mike McKool, Jr.                         John B. Campbell
Theodore Stevenson III              Joel L. Thollander
McKOOL SMITH, P.C.                McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500   300 W. 6th Street, Suite 1700
Dallas, TX 75201                         Austin, TX 78701
(214) 978-4900                            (512) 692-8700


Paper copies will also be mailed to the above principal counsel at the time paper

copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will

be filed with the Court, via Federal Express, within the time provided in the

Court's rules.

December 24, 2014                                      /s/ Robyn Cocho
                                                                Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Civil Procedure 29(c)(7), the undersigned

individual hereby certifies that this BRIEF OF AMICI CURIAE GOOGLE INC.,

HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS, INC.,

RACKSPACE HOSTING, INC., RED HAT, INC., AND SAP AMERICA, INC.

IN SUPPORT OF DEFENDANTS-APPELLEES complies with the type-volume

limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains

2,994 words, excluding the parts of the brief exempted by Federal Rule of

Appellate Procedure 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally

spaced typeface using Microsoft Word, Office 2010, in Times New Roman, 14

point.

Dated:  December 24, 2014          /s/ Christopher J. Glancy
                                   Christopher J. Glancy

                                   Counsel for *amici curiae* Google Inc.,
                                   HTC Corporation, HTC America, Inc.,
                                   LG Electronics, Inc., Rackspace Hosting,
                                   Inc., Red Hat, Inc., and SAP America, Inc.