No. 2014-1802

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC., a California corporation,

*Plaintiff-Appellant,*

*v.*

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS
AMERICA, INC., a New York corporation, AND SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC, a Delaware limited liability company,

*Defendants-Appellees.*

Appeal from the United States District Court for the Northern District of California
in No. 5:12-cv-00630, Judge Lucy H. Koh.

## PLAINTIFF-APPELLANT APPLE INC.'S RESPONSE TO DEFENDANTS-
## APPELLANTS' PETITION FOR REHEARING *EN BANC*

MARK D. SELWYN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

RACHEL KREVANS
ERIK J. OLSON
NATHAN B. SABRI
CHRISTOPHER L. ROBINSON
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000

WILLIAM F. LEE
RICHARD W. O'NEILL
MARK C. FLEMING
LAUREN B. FLETCHER
ANDREW J. DANFORD
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

November 5, 2015

*Counsel for Plaintiff-Appellant Apple
Inc.*

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Apple Inc. certifies the following:

1.    The full name of every party or amicus represented by us is:

Apple Inc.

2.    The names of the real party in interest represented by us is:

Not applicable

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Thomas E. Anderson, Rebecca Bact, Heath A. Brooks, Anna Bonny Chauvet, Andrew J. Danford, Ronald R. Demsher (former), Mark C. Fleming, Lauren B. Fletcher, Adele R. Frankel, Sarah R. Frazier, Liv L. Herriot, Peter J. Kolovos, Gregory H. Lantier, Anna Tin-Yee Lee (former), William F. Lee, Andrew L. Liao, Cosmin Maier, Joseph J. Mueller, Richard W. O'Neill, John P. Pettit, Kevin S. Prussia, James L. Quarles, III, Katie M. Saxton, Mark D. Selwyn, Peter J. Shen (former), Michael J. Silhasek, Victor F. Souto, Thomas G. Sprankling, Timothy D. Syrett, Nina S. Tallon, Timothy A. Tatarka, Olga L. Tobin, S. Calvin Walden, David C. Yang, Kathryn D. Zalewski

GIBSON, DUNN & CRUTCHER LLP:  Jordan H. Bekier, Brian M. Buroker, Frederick S. Chung, Emily L. Fedman (former), Megan K. Fluckiger, Joshua R. Furman (former), Holly A. Jones, Stephanie J. Kim, Steven S. Kim (former), Josh A. Krevitt, Jeffrey G. Lau, Jason C. Lo, Quincy Lu, H. Mark Lyon, Shannon E. Mader, Timothy W. Malone (former), Casey J. McCracken, Azar Mouzari, Mark Nolan Reiter, Jennifer J. Rho, Sarah J. Sladic, Rodney J. Stone, Daniel J. Thomasch, Paul E. Torchia, Michael A. Valek, Robert Vincent, Samuel K. Whitt, Minae Yu

MORRISON & FOERSTER LLP:  James P. Bennett, Ruth N. Borenstein, Brittany N. DePuy (former), Efrain Staino Flores, Richard S.J. Hung, Michael A. Jacobs, Esther Kim, Matthew I. Kreeger, Rachel Krevans, Kenneth A. Kuwayti, Scott F. Llewellyn, Jack W. Londen, Harold J. McElhinny, Erik J. Olson, Mary Prendergast, Christopher L. Robinson, Nathaniel B. Sabri, Nicole M. Smith, Christopher J. Wiener

COOLEY, GODWARD, KRONISH LLP:  Benjamin George Damstedt

SKIERMONT PUCKETT LLP:  Sarah Elizabeth Spires


Dated:  November 5, 2015

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ..................................................................................1

BACKGROUND .....................................................................................2

ARGUMENT ...........................................................................................6

I.    THE PANEL'S CAUSAL NEXUS ANALYSIS DOES NOT MERIT
REHEARING...........................................................................................6

    A.    *eBay* Supports The Panel's Decision To Issue An
Injunction Based On The Specific Facts Of This Case.........................6

    B.    The Panel's Factbound Application of *Apple III* To This
Case Does Not Merit Rehearing.............................9

II.    SAMSUNG'S OBJECTION TO THE PANEL'S STANDARD OF REVIEW
DOES NOT WARRANT REHEARING AND, IN ANY EVENT, IS
WRONG.................................................................................................11

    A.    The Panel Applied The Proper Standard Of Review To
The Specific Facts Of This Case........................................11

    B.    The Panel Was Well Within Its Authority To Decide
That The Specific Facts Of This Case Warranted A
Permanent Injunction. ......................................................14

CONCLUSION ......................................................................................15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Apple Inc. v. Samsung Electronics Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) .........................................................................7

*Apple Inc. v. Samsung Electronics Co.*,
  695 F.3d 1370 (Fed. Cir. 2012) ....................................................................9, 10

*Apple Inc. v. Samsung Electronics Co.*,
  735 F.3d 1352 (Fed. Cir. 2013) .................................................................passim

*Consolo v. Federal Maritime Commission*,
  383 U.S. 607 (1966)........................................................................................15

*Douglas Dynamics, LLC v. Buyers Products Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) .........................................................................4

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................6, 8, 11

*Innogenetics, N.V. v. Abbott Laboratories*,
  512 F.3d 1363 (Fed. Cir. 2009) ..................................................................12, 13

*Oracle America, Inc. v. Google Inc.*,
  750 F.3d 1339 (Fed. Cir. 2014) .......................................................................15

*United States v. Hitachi America, Ltd.*,
  172 F.3d 1319 (Fed. Cir. 1999) .......................................................................15

## OTHER AUTHORITIES

36 C.J.S. *Federal Courts* § 319 (updated June 2015).............................................15

**INTRODUCTION**

The jury in this case found that Samsung—Apple's primary and "fierce" competitor—infringed Apple's patents more than 35 million times. To protect its intellectual property, Apple sought a narrow injunction that prohibited only use of the infringing features and that included a sunset period for the full amount of time that Samsung represented that it needed to design around Apple's patents. The district court found that Apple had suffered sales-based losses that would be difficult to quantify and that the balance of hardships and public interest weighed in Apple's favor. The district court denied Apple's request for an injunction solely because it believed that Apple had failed to show a causal nexus, even though Apple presented substantial evidence showing some connection between Samsung's massive infringement and Apple's resulting harm. This Court vacated that decision, finding that the district court had used the wrong causation standard.

Samsung now attempts to portray the panel's decision as improperly blazing new law, but Samsung's petition merely amounts to an argument that the panel incorrectly applied established law to this case's record. Such a ruling does not threaten the uniformity of this Court's precedent. Nor does this case-specific disagreement raise a question of exceptional importance—a future panel can reach a different decision when faced with different facts. Rehearing *en banc* is thus neither necessary nor appropriate.

# BACKGROUND

Apple has invested billions of dollars and years of research to create some of the most innovative, distinctive, and successful products in the world, such as its revolutionary iPhone and iPad. Apple Br. 4-5. The patents that Apple has received as a result of these efforts include many that "cover[] … the innovative technology incorporated into the iPhone," Op. 3, such as the three patents at issue here: U.S. Patent Nos. 5,946,647 ("the '647 patent"), 8,046,721 ("the '721 patent"), and 8,074,172 ("the '172 patent").

Claim 9 of the '647 patent claims an innovative system that detects multiple types of "data structures" (such as telephone numbers and email addresses) within text (such as an email, text message, or webpage), and generates links to specific actions that can be performed for each type of detected structure. For example, when a user receives an email that includes a phone number, he or she is prompted——upon selecting the linked number—with the option to dial the phone number or store it in an electronic phonebook automatically. *See* Apple Br. 6-7; Op. 3-4. (Samsung's assertion (at 5) that "Apple does not practice the '647" patent is incorrect; Apple presented ample evidence at trial that it did and the district court did not rule to the contrary, Apple Br. 59 n.11; A13 & n.3.)

Claim 8 of the '721 patent protects Apple's iconic "slide-to-unlock" feature that permits a user to unlock a touchscreen device by making contact with an

"unlock image" and continuously moving that image to a second, predefined location. Apple Br. 9; *see also* Op. 3. (Again, Apple put on at trial what the district court recognized was "probative evidence" demonstrating that it practices the '721 patent, Apple Br. 9-11, 58, a point Samsung's petition does not challenge, Pet. 5.) Finally, the '172 patent claims a method for automatically correcting spelling errors on touchscreen devices, which helps users type more efficiently and accurately without a physical keyboard. Apple Br. 11; *see also* Op. 4.

The jury found that Samsung—Apple's "largest and fiercest competitor"— collectively infringed these three Apple patents more than 35 million times. Apple Br. 1; Op. 20. Apple requested a narrowly-tailored permanent injunction that barred Samsung only from further use of the infringing features. Op. 5. Apple's proposed injunction also granted Samsung a one-month sunset period to design those features out of its products, which Samsung had repeatedly stated could be done with ease in less than a month. *Id*. In support of its request for injunctive relief, Apple presented substantial evidence of irreparable harm, including that each smartphone sale lost to Samsung would have an incalculable downstream effect on future sales of a variety of Apple products, survey evidence showing that consumers valued these specific patented features and were willing to pay for them, and evidence that Samsung copied the patented features. *See* Apple Br. 17-19, 50-60; *see also* Op. 13-17. Apple also presented ample evidence that it

suffered significant harm to its reputation as an innovator, due to its competitor Samsung's infringement.  Apple Br. 14-16, 34-39; *see Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); Conc. Op. 2 ("[T]he toe-to-toe competition between Apple and Samsung, Apple's reputation as an innovator, and the importance of the patents-in-suit to that reputation[] establishes that Apple will likely suffer irreparable harm ....").

The district court agreed that Apple's proposed injunction was narrowly tailored.  *E.g.*, A41-42.  It also made numerous factual findings supporting the injunction that Samsung now challenges, including that "damages for Apple's alleged irreparable harm in connection with alleged lost sales are difficult to quantify" and that the balance of hardships and public interest favored Apple. A35-42.  However, the district court denied an injunction "[p]redicated entirely on th[e] finding" that Apple had not demonstrated a "causal nexus" between Samsung's infringement and Apple's established harm.  *See* Op. 5; A42; *see also Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013) ("*Apple III*") (irreparable harm for an injunction requires showing "some connection between the patented feature and demand for [the infringing] products").[1]

---

[1]    The district court found that the lack of an adequate remedy at law prong did not favor Apple, but that finding rested entirely on its erroneous conclusion that Apple failed to prove a causal nexus.  *E.g.*, A35; *see also* Apple Br. 61-63.

The panel disagreed, holding that the district court applied this Court's causal nexus analysis too rigidly and in a way that "[e]ssentially bar[red] entire industries of patentees" from obtaining an injunction, "in direct contravention of the Supreme Court's approach in *eBay*." Op. 12; *see id.* 22 (district court's rule "would virtually foreclose the possibility of injunctive relief in any multifaceted, multifunction technology"). The panel also observed that "it was legal error for the district court to effectively require Apple to prove that the infringement was the sole cause of [its lost sales]." *Id.* 11. Chief Judge Prost challenged this point, *e.g.*, Dis. Op. 5-6, but did not suggest the panel relied on the wrong precedent. Rather, she disagreed with the panel's application of that precedent to the record.[2]

The panel also upheld the district court's underlying factual findings on the remaining three *eBay* prongs, including that "the extent of Apple's … [sales-based] losses are very difficult to quantify," that "forcing Apple to compete against its own patented invention" created a substantial hardship, and that the public interest "favored" Apple given the narrow injunction and the strong public interest in promoting "encouragement of investment-based risk" in the patent system. Op. 18-20. Samsung does not seek *en banc* review of any of those rulings.

---

[2]     Chief Judge Prost also disagreed with both the district court's and the panel majority's analysis of the public interest factor, Dis. Op. 13-14, but Samsung does not suggest that that issue warrants *en banc* review.

Ultimately, the panel concluded that Apple presented sufficient evidence to warrant a permanent injunction. Op. 22. Notably, the panel did not hold that the district court had *failed* to make a required factual finding; it simply concluded that the district court had misapplied the law to the facts presented.

## ARGUMENT

## I. THE PANEL'S CAUSAL NEXUS ANALYSIS DOES NOT MERIT REHEARING.

Samsung's argument (at 8-12) that the panel's decision conflicts with *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and this Court's case law lacks merit. *eBay* supports issuing an injunction on this record, and the panel majority's factbound application of *eBay* and this Court's precedent to the record in this case does not warrant rehearing in any event.

### A. *eBay* Supports The Panel's Decision To Issue An Injunction Based On The Specific Facts Of This Case.

In *eBay*, the Supreme Court denounced the use of categorical rules in assessing injunctive relief. 547 U.S. at 393 ("[E]xpansive principles suggesting that injunctive relief could not issue in a broad swath of cases … cannot be squared with the principles of equity adopted by Congress."). Samsung argues (at 9) that the panel created a rule that permits patentees to receive an injunction without establishing that they suffered irreparable harm *caused* by infringement. Not so. The panel merely applied this Court's repeated pronouncement that the causal nexus analysis is satisfied where the party seeking an injunction demonstrates

"some connection" between the injunction and the infringement. *E.g.*, Op. 10-11 & n.1; *see Apple III*, 735 F.3d at 1364, 1368 (whether causal nexus analysis is satisfied is a matter "of degree, to be evaluated by the district court"); *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("*Apple I*") ("[T]he district court was correct to require a showing of *some causal nexus* between Samsung's infringement and the alleged harm to Apple." (emphasis added)). Indeed, even Samsung agrees that "[t]o prove a causal nexus between infringement and harm where the harm is tied to lost sales, a patentee must show 'some connection between the patented feature and demand for [the accused] products.'" Pet. 2 (quoting *Apple III*, 735 F.3d at 1364).[3]

Also unsupported is Samsung's accusation (at 8-10) that the panel's decision leads to a new categorical rule that will result in "automatic injunctive relief" that will follow virtually every infringement verdict. *See also* CCIA Br. 3. Not every patentee will be able to show that it suffered harm in the first instance—especially where the patentee and the infringer are not "fierce competitors" like Apple and Samsung. *See* Op. 4. Indeed, it was "undisputed that" the smartphone market "is essentially a two-horse race" between Apple and Samsung. *Id.* 19; *see id.* 9-10

---

[3]    Samsung (at 2) and amicus Google (at 4) wrongly assert that the "some connection" test is qualified by a supposed additional requirement that "the infringing feature drive[] consumer demand for the accused product." In fact, the "some connection" test merely clarifies what level of proof is needed to show that the infringing feature drives consumer demand.

(citing district court finding that "'Apple was Samsung's largest smartphone competitor'"); Conc. Op. 13 ("Apple and Samsung are toe-to-toe competitors in a unique marketplace.").

Further, as the panel made clear, not every showing of a connection between customer demand for a product and infringement will satisfy a causal nexus analysis.  Op. 11 n.1 (citing *Apple III*, 735 F.3d at 1364).  And any patentee will still have to address the other *eBay* factors—lack of an adequate remedy at law, balance of hardships, and the public interest—all of which the panel and the district court found supported an injunction here.  *See supra* pp. 4-5 & n.1.  In other cases, a patentee may be unable to meet these factors, particularly where the patentee (unlike Apple here) does not seek to maintain exclusivity over its right to exclude others—and specifically competitors—from practicing the patent.

To the contrary, it is Samsung's rigid proposed causal nexus inquiry that, if accepted, would improperly create a new categorical rule in violation of *eBay*.  Op. 12, 22; *accord eBay*, 547 U.S. at 393 (rejecting a rule that would "categorically deny" injunctions).  As the panel found, such a test—which would demand a heightened level of causation not required by *eBay* or this Court's precedent— would "virtually foreclose the possibility of injunctive relief in any multifaceted, multifunction technology."  Op. 22.

### B.    The Panel's Factbound Application of *Apple III* To This Case Does Not Merit Rehearing.

Samsung's contention (at 10-12) that the panel's decision conflicts with *Apple I*, *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370 (Fed. Cir. 2012) ("*Apple II*"), and *Apple III* is similarly unavailing.  The panel applied the test articulated in *Apple I* and *Apple II* and summarized in *Apple III*:  that "rather than show that a patented feature is *the exclusive reason* for consumer demand, [the patentee] must show some connection between the patented feature and demand for Samsung's products."  735 F.3d at 1364; *accord* Op. 10-11.  *Apple III* listed several "example[s]" of the "variety of ways to make this required showing," 735 F.3d at 1364; *accord* Op. 11 n.1, but did not impose a "rigid standard" limited to those specific examples.  735 F.3d at 1364; *accord* Op. 11 n.1.

Samsung (at 11) concedes that the panel properly relied on *Apple III* as reciting the governing legal standard, but disputes the panel's *application* of that standard.  Such a case-specific argument is hardly grounds for *en banc* review.  *See supra* p. 1.[4]

Samsung also twists the panel's decision in arguing (at 11) that the panel announced a new "insubstantial connection" standard.  *Cf.* Google Br. 4; CCIA Br.

---

[4]    The panel did not reach the evidence showing that Apple suffered substantial reputational harm from Samsung's infringement.  *See* Apple Br. 34-50; Op. 22 n.2.  As Judge Reyna's concurring opinion indicated, this evidence of reputational harm provides an alternative basis for finding irreparable harm.  *See* Conc. Op. 10-18.

2.  The panel never cast Apple's causation proof as "insubstantial" (nor was it). And in any event, *Apple III* made clear that "some connection" necessarily requires more than the "insubstantial connection" discussed in *Apple II*.  735 F.3d at 1364 (citing *Apple II*, 695 F.3d at 1375).  The panel here did not hold otherwise.  *See* Op. 11 n.1 (noting that "some connection" involves a greater showing than *Apple III*'s example of a situation where consumers are only willing "to pay a nominal amount for an infringing feature").

Samsung argues (at 11) that a causal nexus analysis requires proof that the infringement is a "substantial cause" of irreparable harm.  But it identifies *no* on-point case law other than a general statement in *Apple III* that a causal nexus inquiry "reflects general tort principles of causation."  Pet. 11.  That cannot overcome *Apple I's and III*'s clear statement that "some connection" is sufficient.

Similarly, Samsung insists (*e.g.*, at 3) that a patentee seeking a feature-based injunction must show that the infringing feature is a "significant driver of consumer demand," *see also* Google Br. 3, but identifies *no* case law supporting this supposed rule.  While *Apple III* recognized that one of the "variety of ways" to satisfy the causal nexus test is demonstrating that "the inclusion of a patented feature makes a product significantly more desirable," the decision made clear this was only an "example."  735 F.3d at 1364; Op. 11 n.1.

Finally, Samsung and its amici accuse the panel of creating a "new" causal nexus framework that is too general for district courts to apply consistently. Pet. 3-4, 12; Google Br. 7-8. Once again, however, the "some connection" requirement comes directly from *Apple III*. Samsung's critique, moreover, applies equally to *eBay* itself, which refused to lay down bright-line rules regarding injunctive relief, but rather held that the decision whether to grant such "relief rests within the equitable discretion of the district courts … [to] be exercised consistent with traditional principles of equity." 547 U.S. at 394. *En banc* review is not needed to articulate strict boundaries for an injunction analysis; indeed, that type of test is precisely what the Supreme Court overruled in *eBay*.

## II. SAMSUNG'S OBJECTION TO THE PANEL'S STANDARD OF REVIEW DOES NOT WARRANT REHEARING AND, IN ANY EVENT, IS WRONG.

Samsung's argument (at 12-15) that the panel supposedly failed to accord the district court's ruling sufficient deference falls well short of the standard for rehearing *en banc*, and fails on the merits in any event.

### A. The Panel Applied The Proper Standard Of Review To The Specific Facts Of This Case.

Samsung asserts that the panel failed to review the district court's ruling—in particular, its analysis of the conjoint survey from Dr. Hauser (one of the world's most prominent survey experts)—for abuse of discretion. Pet. 13. But the panel clearly cited and applied the right standard. *E.g.*, Op. 6-7 ("The district court's

decision is reviewable for abuse of discretion. A court abuses its discretion when it 'ma[kes] a clear error of judgment in weighing relevant factors or exercise[s] its discretion based upon an error of law or clearly erroneous factual findings.'" (quoting *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2009) (citation omitted)). Whether a panel correctly applied the correctly-stated standard of review is a quintessentially case-specific issue. And while reasonably-minded judges may (and often do) disagree concerning a standard's application in a particular case, such a disagreement is not a basis for rehearing *en banc*.

Moreover, the panel majority's analysis was correct based on the record in this case. The district court did not preclude Dr. Hauser from presenting his survey evidence and opinions under *Daubert*, or find that Dr. Hauser's survey results or related opinions were inadmissible because they rested on unreliable grounds. A25; *see also* Op. 16 (quoting the district court).[5] Rather, the district court concluded only that this survey evidence was insufficient to satisfy its (legally erroneous) understanding of a causal nexus analysis.[6] Because the district court's

---

[5]     Despite Samsung's criticism (at 6, 13) of Dr. Hauser's survey, Samsung notably does not address his conclusion that Apple's patented features made "consumers more likely to buy" Samsung's products. Apple Br. 18. Moreover, while Samsung quibbles over the *amount* that the patented features are worth, it does not suggest that their value was zero or "insubstantial."

[6]     Contrary to Samsung's assertion (at 10 n.4), the panel correctly ruled that the district court erred by requiring Apple to show infringement was the sole cause of lost sales, even though the district court did not expressly state it was doing so.

decision was "predicated on an incorrect understanding of the nature of the causal nexus requirement," Op. 16, the panel properly disregarded it, *see Innogenetics*, 512 F.3d at 1379 (court abuses its discretion when it "exercise[s] its discretion based upon an error of law").

Samsung also challenges the panel's suggestion that the district court found that Samsung copied Apple's patents. Pet. 13-14. But the district court *did* find that Apple "cited evidence indicat[ing] that Samsung paid close attention to, and tried to incorporate, certain iPhone features" such as those claimed in the '647 and '721 patents, which is "evidence" "of copying." A26-27; *see also* A27 (discussing district court's earlier opinion finding there is "evidence that Samsung attempted to copy certain Apple features"). While Samsung may not agree with the panel's assessment of the significance of this factual finding, such a case-specific disagreement does not warrant rehearing.[7]

Finally, Samsung (and the dissent) argue that there is no "record basis" for the panel's conclusion that carriers and users preferred Apple's patented features. Pet. 14; Dis. Op. 7. Again, this Court does not rehear a panel's conclusion on

---

*Apple III* did the same thing. 735 F.3d at 1364 ("[T]he district court *appears* to have required Apple to show that one of the patented features is *the sole reason* consumers purchased Samsung's products." (first emphasis added)).

[7] Samsung (at 14) also takes issue with the panel's analysis of the strength of the copying evidence under the guise that the panel "substitut[ed] its own view of the copying evidence for the district court's." But Samsung identifies no district court finding on these points to which the panel supposedly should have deferred.

matters of fact.  Moreover, Samsung and the dissent are wrong that there is "nothing" in the record to support the panel's finding.  The district court cited Samsung emails recognizing that a particular carrier "disapproved of the noninfringing 'circle lock' alternative" when compared to the slide-to-unlock method protected by Apple's '721 patent.  A26; Op. 13; *see also*, *e.g.*, A21019 (carrier expressing "a negative response" when Samsung implemented an alternative unlock feature).  The district court also recognized that Apple presented evidence "indicating that some users criticized certain Samsung keyboard and word-correction designs" that were alternatives to the '172 patent.  A26; Op. 13; *see also* Apple Br. 19 (citing carrier and consumer complaints).[8]

### B. The Panel Was Well Within Its Authority To Decide That The Specific Facts Of This Case Warranted A Permanent Injunction.

Samsung also argues (at 15) that the panel was required to remand this case to let the district court decide whether an injunction is warranted.  But even the Supreme Court can "make [a] determination" without remand where, as here, "the matter at issue has been fully briefed and argued, the necessary examination of the

---

[8]    Samsung and the dissent assert that the panel wrongly "reli[ed]" on copying evidence to establish irreparable harm.  Pet. 14 n.6; Dis. Op. 11.  But the panel stated that "evidence of copying" is not sufficient standing alone to establish a causal nexus; the panel simply recognized that copying "evidence [is not] wholly irrelevant."  Op. 14.  This Court assessed copying evidence in precisely the same way in *Apple III:*  "[A]s we explained in *Apple I*, although 'evidence that Samsung's employees believed it to be important to incorporate the patented feature into Samsung's products is certainly relevant to the issue of nexus between the patent and market harm, it is not dispositive.'"  735 F.3d at 1367.

record and determination is easily made, the point is clear, or the outcome is readily apparent." 36 C.J.S. *Federal Courts* § 319 (updated June 2015) (footnotes omitted); *see, e.g.*, *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 621 (1966) (declining to remand where the "controversy already dates back" years, "has been before the Court of Appeals twice, and … the relevant standard is not hard to apply"). This Court has applied a similar rule in a variety of contexts. *E.g.*, *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1373 (Fed. Cir. 2014); *United States v. Hitachi Am., Ltd.*, 172 F.3d 1319, 1338 (Fed. Cir. 1999).

Samsung's sole cited authority only held that a remand was required when the district court "*failed* to make a [factual] finding" due to legal error. Pet. 15. Here, however, the district court did not fail to make a required finding; it simply analyzed the facts presented under the wrong legal standard. This Court has the authority to correct such an error without remand.

## CONCLUSION

Samsung's petition for rehearing *en banc* should be denied.

Respectfully submitted,

/s/ William F. Lee

MARK D. SELWYN                      WILLIAM F. LEE
WILMER CUTLER PICKERING             RICHARD W. O'NEILL
   HALE AND DORR LLP              MARK C. FLEMING
950 Page Mill Road                  LAUREN B. FLETCHER
Palo Alto, CA  94304                ANDREW J. DANFORD
(650) 858-6000                      WILMER CUTLER PICKERING
                                       HALE AND DORR LLP
RACHEL KREVANS                      60 State Street
ERIK J. OLSON                       Boston, MA  02109
NATHAN B. SABRI                     (617) 526-6000
CHRISTOPHER L. ROBINSON
MORRISON & FOERSTER LLP
425 Market Street                   THOMAS G. SPRANKLING
San Francisco, CA  94105-2482       WILMER CUTLER PICKERING
(415) 268-7000                         HALE AND DORR LLP
                                    1875 Pennsylvania Avenue, N.W.
                                    Washington, DC  20006
                                    (202) 663-6000

                                    *Counsel for Plaintiff-Appellant Apple
                                    Inc.*

November 5, 2015

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of November, 2015 I filed the foregoing

Plaintiff-Appellant Apple Inc.'s Response to Defendants-Appellants' Petition for

Rehearing *En Banc* with the Clerk of the United States Court of Appeals for the

Federal Circuit via the CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Appellant Apple, Inc. certifies that:

1.     The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 40(b) because exclusive of the exempted portions it does not exceed 15 double-spaced pages.

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 in a proportionally spaced typeface:  Times New Roman, font size 14 point.

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

November 5, 2015